IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| Clay Financial LLC, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | No. 16 C 11571 |
| v. | ) | |
| | ) | Hon. Virginia M. Kendall |
| Michael S. Mandell, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiffs allege that Defendant Michael S. Mandell solicited investments which he represented would be diversified among various high-growth technology companies while he actually gave the money to his own shell companies. Plaintiffs,[1] victims of Mandell's scheme, filed various fraud claims against Mandell; Finance Factor, LLC; Strategic Innovative Concepts, LLC; Sky3 Holdings, LLC; Daniel Field; KTG IP, INC.; and KTG IP, LLC. Finance Factor and Sky3 Holdings moved to dismiss the counts of common law fraud and fraudulent misrepresentation, violation of the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA"), 815 Ill. Comp. Stat. 505/2, negligent misrepresentation, promissory estoppel. (Dkt. 32, 43.)[2] Finance Factor and Sky3 along with Defendant Daniel Field[3], who controlled many of

---

[1] Clay Financial, LLC; Woodbourne Investments, LLC; Geraldine K. Schwab, as Trustee of the Walter L. Schwab Irrevocable Trust; Walter Schwab, as Trustee of the Walter Revocable Trust; Ellen G. Schwab, as Trustee of the Ellen G. Schwab Revocable Trust; Carol Schwab; and Dominique Schmidt (collectively, "Plaintiffs").

[2] Against Finance Factor, Plaintiffs bring fifteen counts of breach of contract in addition to common law fraud and fraudulent misrepresentation, violation of the Illinois Consumer Fraud and Deceptive Practices Act (815 ILCS § 505/2), negligent misrepresentation, promissory estoppel, and conspiracy to defraud. Against Sky3 Holdings, LLC, Plaintiffs bring six counts of breach of contract as well as common law fraud and fraudulent misrepresentation, violation of the Illinois Consumer Fraud and Deceptive Practices Act, negligent misrepresentation, promissory estoppel, and conspiracy to defraud. Against Strategic Innovative Concepts, LLC, Plaintiffs bring four counts of breach of contract, common law fraud and fraudulent misrepresentation, violation of the Illinois Consumer Fraud

1

the companies with Mandell that were used in his scheme, also moved to dismiss the conspiracy to defraud counts against them. (Dkt. 32, 43, 40.) Finally, the Field Defendants moved to dismiss Plaintiffs' claim for unjust enrichment. (Dkt. 40.) For the reasons stated, Defendants' motions are denied.

## BACKGROUND

The Court takes the following allegations from the Complaint and treats them as true for purposes of the motion. *See Adams v. City of Indianapolis,* 742 F.3d 720, 728 (7th Cir. 2014).

*Development of the "Mandell Companies"*

Defendant Mandell solicited investments on behalf of companies which he had formed solely for the purpose of furthering his own enterprise but he hid from investors that he controlled the companies they were investing in (Mandell Companies) and failed to exercise corporate formalities. (Dkt. 1 ¶ 30.) The scheme began in 2011 when Mandell formed Finance Factor, an Illinois limited liability company purported to provide secured financing to high growth companies in the technology sector. (*Id.* ¶ 19.) Mandell formed Strategic Innovative Concepts, LLC ("Strategic Innovative") in November of 2014, allegedly to compliment the short term investment opportunities provided by Finance Factor by attracting "longer term investors seeking longer term returns." (*Id.* ¶ 28.) Mandell then formed Sky3 Holdings, LLC ("Sky3") in September of 2015 in order to continue pursuing lending opportunities on a longer-term basis. (*Id.* ¶ 29.) Mandell directed these companies' finances, policies, and business practices. (*Id.* ¶ 30.)

---

and Deceptive Practices Act, negligent misrepresentation, promissory estoppel, and conspiracy to defraud. Plaintiffs bring counts against Michael Mandell for common law fraud and fraudulent misrepresentation, violation of the Illinois Consumer Fraud and Deceptive Practices Act, negligent misrepresentation, unjust enrichment, promissory estoppel, alter ego liability, and conspiracy to defraud.
[3] Daniel Fields also moves on behalf of the entities in his control, KTG, Inc. and KTG, LLC.

*Plaintiffs' Investments*

In June of 2014, Mandell reached out to Dominique Schmidt ("Schmidt"), the business manager for Plaintiffs, to solicit investments on behalf of Finance Factor. (Dkt. 1 ¶ 20.) Schmidt coordinated Plaintiffs' business activities and served as the liaison between Plaintiffs and potential investment opportunities. (*Id.* ¶ 7.) Mandell assured Schmidt that any loans made to Finance Factor would be diversified, that the risk would be low, and that collateral pledged by borrowers would be carefully analyzed and confirmed. (*Id.* ¶¶ 23, 24.) Mandell further assured Schmidt that Plaintiffs would receive a preferred return, with interest paid on a scheduled basis without risk of fluctuations in the stock market. (*Id.* ¶ 25.) Following these representations, Plaintiffs made loans to Finance Factor. (*Id.* ¶ 32.) Instead of offering placement memoranda as Mandell promised would be the process to Schmidt, Plaintiffs were encouraged via email to jump on these solicitations quickly, and were offered favorable interest rates as an incentive to do so. (*See Id.* ¶ 27) (Mandell represented that the offer to invest was on a "tight funding schedule.")

In mid-2015, Mandell again reached out to Schmidt, this time to solicit Plaintiffs' investments in Strategic Innovative. (Dkt. 1 ¶ 33.) Mandell informed Schmidt that Strategic Innovative would be "making loans and transacting business in a similar manner as Finance Factor," and that the proceeds of Plaintiffs' investments would be loaned exclusively to high return, high technology, secured asset companies. (*Id.* ¶¶ 33, 31.) Following these representations, Plaintiffs made various loans for the benefit of Strategic Innovative and for the continued benefit of Finance Factor. (*Id.* ¶¶ 32, 33.)

Mandell would regularly request that Plaintiffs' loans and interest payments be "rolled over" into new promissory notes that would then be memorialized in a new note by a different

Mandell Company. (Dkt. 1 ¶ 63.) Some promissory notes, typically of a smaller value, were paid off from time to time. (*Id.* ¶ 64.) When this would occur, Mandell utilized funds from one of the Mandell Companies' accounts to fulfill obligations on a different Mandell Companies' account in order to pay off indebtedness. (*Id.* ¶ 64.)

Mandell also loaned in excess of $3 million to another company, KTG, LLC, a third of which (approximately $1 million) came from Plaintiffs' investments. (Dkt. 1 ¶ 76.) KTG, LLC is the general operating company for operations owned by Defendant Daniel Field. ("Field"). (*Id.* ¶ 14.) KTG, LLC is owned by KTG, INC., one of the two members of Sky3, a Mandell Company. (*Id.* ¶ 77.) Mandell never informed Plaintiffs that Field, with whom Mandell was closely tied, was the owner of both KTG Inc. and KTG LLC. (*Id.* ¶ 78.) Instead, he led Plaintiffs to believe that their investments continued to be diversified.

In early 2016, Mandell informed Plaintiffs that Mandell Companies had been adversely affected by defaults on loans totaling more than $1.1 million which were made to another company, 5SN Communications, LLC ("5SN"). (Dkt. 1 ¶¶ 72, 73.) Initially, Mandell assured Plaintiffs that because 5SN was performing work in connection with the 2016 Olympics for Ericsson, a multinational telecommunications equipment and services company, all outstanding obligations would be paid upon the completion of this work. (*Id.* ¶ 72.) Mandell never disclosed that his close associate Daniel Field managed 5SN, nor that Sky3 was performing "back office work" for 5SN. (*Id.* ¶¶ 73, 79.)

When 5SN never recovered, Plaintiffs became suspicious. In a last ditch effort to save his scheme, Mandell concocted a story that 5SN had defrauded the Mandell Companies by providing Mandell with fraudulent bank records indicating that 5SN was performing work for Ericsson when in fact, the relationship with Ericsson never existed. (*Id.* ¶ 86.) Mandell also

informed Plaintiffs that the vast majority of Plaintiffs' funds had been loaned to 5SN. (*Id.* ¶¶ 83, 86.) Plaintiffs then requested documentation regarding the security of their funding and Mandell refused to comply. (*Id.* ¶ 87.) Plaintiffs eventually realized that their investments had never been diversified in secured high growth companies. (*Id.*) Instead, the Mandell Companies had colluded with Field, KTG, LLC, and KTG, Inc., to loan Plaintiffs' funds back to their own companies. (*Id.* ¶¶ 83, 80.) As a result of this scheme, obligations to Plaintiffs remain outstanding and overdue in the principal amount of more than $1.5 million. (*Id.* ¶ 65.)

## **STANDARD OF REVIEW**

In order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads sufficient factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis,* 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Ashcroft v. Iqbal,* 556 U.S. at 678).

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see, e.g., Swanson v. Citibank*, 614 F.3d 400, 406 (7th Cir. 2010) (noting that a claim governed by Rule 9(b) "stands on a different footing" than a claim under Rule 8); *United States v. Acacia Mental Health Clinic LLC*, 836 F.3d 770, 776 (7th Cir. 2016) ("we have made clear that the pleading standards under Rule 8 and Rule 9 remain distinct."). This heightened pleading standard requires the plaintiff to plead "the who, what, when, where, and how . . ." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

Ultimately, "fair notice is the 'most basic consideration underlying Rule 9(b).'" *Rocha v. Rudd*, 826 F.3d 905, 911 (7th Cir. 2016) (citing *Vicom, Inc. v. Harbridge Merch. Servs. Inc.*, 20 F.3d 771, 777-78 (7th Cir. 1994)).

## DISCUSSION

### I. Common Law Fraud and Illinois Consumer Fraud Act

Defendants Finance Factor and Sky3 moved to dismiss Plaintiffs' common law fraud and ICFA claims. To prevail on a claim for common law fraud, a plaintiff must allege: (1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement. *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 841 (7th Cir. 2007) (citation omitted). Similarly, under the ICFA a plaintiff must allege: (1) a deceptive act or practice by the defendant; (2) the defendant intended the plaintiff to rely on the deception; (3) the deception occurred in the course of conduct involving trade or commerce; and (4) actual damages to the plaintiff proximately caused by the deception. *See Cripe v. Leiter*, 703 N.E.2d 100, 103 (1998).

*Finance Factor*

Finance Factor moved to dismiss the counts of common law fraud and violation of the ICFA primarily on two grounds: (1) Plaintiffs' claims are nothing more than breach of contract claims; (2) Plaintiffs cannot prevail in alleging fraud based on promissory notes. (Dkt. 32.)

First, a plaintiff must state some "stand-alone allegation of a fraudulent act or practice . . .," beyond breach of contract in order for a claim to be actionable and, according to Finance Factor, Plaintiffs fail to allege facts beyond a mere breach of promissory notes.

*Greenberger v. GEICO General Ins. Co.*, 631 F.3d 392, 401 (7th Cir. 2011). Finance Factor relies on *Zankle v. Queen Anne Landscaping*, in which an Illinois Appellate Court found that a simple failure to fulfill a contract does not amount to fraud. 311 Ill. App. 3d 308, 312 (2nd Dist. 2000). In *Zankle*, the plaintiff signed a contract with a landscaping company and was ultimately unsatisfied with the work done. But a finding that the breach of a promise to remove rocks is fraudulent under those circumstances would have "convert[ed] any suit for breach of contract into a consumer fraud action." *Id.* at 312. In contrast, Plaintiffs' claims are based on Defendants' fraudulent inducement to enter the contract in the first place. Finance Factor assured Plaintiffs that their investments would be used to fund third party high-growth companies in the technology sector when the funds were actually used in a scheme to fund Defendants' other companies. (Dkt. 1 ¶¶ 228, 241, 232, 235). Put in *Zankle* terms, this was not a mere failure to remove rocks but a misrepresentation about whether a viable landscaping company existed in the first place. Plaintiffs also allege that they were directly and proximately injured as a result of their reliance on the truth of Finance Factor's omissions. (Dkt. 1 ¶¶ 236, 251.)

Next, Finance Factor argues that fraud claims are limited to misrepresentations regarding present or past facts and that promissory notes regard future conduct. (Dkt. 32 at 4.) To support this contention, Finance Factor relies on *Wigod v. Wells Fargo Bank.* 673 F.3d 547, 570 (7th Cir. 2012). But *Wigod* makes clear that promissory fraud is actionable in Illinois where the plaintiff "also proves that the act was a part of a scheme to defraud." *Wigod*, 673 F.3d at 570 (citing *Bradley Real Estate Trust v. Dolan Associates, Ltd.*, 640 N.E.2d 9, 14 (1994)). Finance Factor solicited Plaintiffs for investments and promised that the notes would go to existing customer borrowers but the only customers were those companies of Mandell's own creation.

7

(*Id.* ¶¶ 31, 88.) Plaintiffs relied on these misrepresentations in signing the promissory notes and now their investments are overdue in the principal amount of $1.5 million. *(Id.* ¶ 65.) Not only did Plaintiffs allege a scheme sufficient for a claim of promissory fraud, many of the pleaded misrepresentations occurred in the past, prior to executing the promissory note, like the promise to conduct due diligence into other technology companies. (*Id.* ¶ 21.) Therefore, dismissal is not appropriate on any of Plaintiffs' fraud claims against Finance Factor.

*Sky3*

Sky3 moved to dismiss the counts on the grounds that Plaintiffs have "lumped" defendants together in a manner that fails to meet the heightened pleading standard of Rule 9(b). (Dkt. 45.) Sky3 asserts that Plaintiffs have inappropriately lumped them together with other defendants. Sky3 argues that Plaintiffs' pleading is like that in *Sears v. Likens*, in which the complaint was "bereft of any detail" regarding who was involved in the fraud, how the fraud occurred, or when fraudulent statements were made. 912 F.2d 889, 893 (7th. Cir. 1990). Sky3 mischaracterizes Plaintiffs' Complaint. Plaintiffs allege specific fraudulent actions including that Mandell represented that Sky3 was the "new Finance Factor" and in the meantime Mandell shuffled Plaintiffs' funds between Sky3 and his other companies. (Dkt. 1 ¶¶ 35, 88, 239, 240, 243, 244.) Moreover, the Complaint alleges the particularities of when the fraudulent statements commenced—a June 25, 2014 communication set forth Finance Factor's investment strategy and therefore, by extension, Sky3 because Mandell communicated that Sky3 was the "new Finance Factor." (Dkt. 1 ¶ 239.) In contrast to the bare-bones complaint in *Sears,* the Complaint here meets the heightened bar of Rule 9(b).

## II. Negligent Misrepresentation

Finance Factor and Sky3 moved to dismiss the count of negligent misrepresentation on

the grounds that the *Moorman* doctrine bars the recovery of economic loss alone in a negligence action. (Dkt. 32, 45.) To state a claim for negligent misrepresentation, a plaintiff must allege: (1) a false statement of material fact; (2) carelessness or negligence in ascertaining the truth of the statement by the party making it; (3) an intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; (5) damage to the other party resulting from such reliance; and (6) a duty on the party making the statement to communicate accurate information. *See, e.g., First Midwest Bank, N.A. v. Stewart Title Gaur. Co.*, 218 Ill.2d 326, 334-335 (2006); *Board of Educ. of City of Chicago v. A, C, and S, Inc.*, 131 Ill.2d 428, 452 (1989).

Generally, a negligence cause of action cannot be sustained for the recovery of economic loss alone. *See Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill.2d 69 (1982). Illinois recognizes two exceptions to this doctrine. First, economic loss is recoverable "where one intentionally makes false representations." *Id.* at 88-89 (citing *Soules v. General Motors Corp.*, 79 Ill.2d 282 (1980)). Second, economic loss is recoverable "where one who is in the business of supplying information for the guidance of others in their business transactions makes negligent representations." *Id.* at 88-89 (citing *Ronzy v. Marnul*, 43 Ill.2d 54 (1969)).

Finance Factor and Sky3 argue only that Plaintiffs fail to meet the first exception because there are no facts demonstrating that Defendants were in the "business of supplying information for the guidance of others[.]" *Moorman*, 435 N.E.2d at 452. Tellingly, Defendants ignores the first exception, the one that applies here. Plaintiffs allege that Mandell, through Finance Factor, "intentionally misrepresented . . . in order to induce reliance on the part of Plaintiffs to make investments in the Mandell Companies." (Dkt. 1 ¶ 232.) Plaintiffs sufficiently allege the elements of a claim for negligent misrepresentation. Mandell "intentionally misrepresented, or acted with reckless disregard or culpable ignorance with regard to the truth or falsity of his

9

misrepresentations." (*Id.*) He did so "in order to induce reliance on the part of Plaintiffs to make investments in the Mandell Companies." (*Id.* ¶ 260.) Plaintiffs "relied upon Mandell's direct or indirect omissions of material fact," and their reliance resulted in Plaintiffs being "injured in their property in an amount in excess of $1.5 million." (*Id.* ¶¶ 261, 264.) The *Moorman* doctrine bars economic recovery for "innocent misrepresentation," and Plaintiffs here sufficiently allege that the misrepresentations were not innocent. The Complaint therefore states a claim for negligent misrepresentation and is not barred by the *Moorman* doctrine.

### III. Promissory Estoppel

Finance Factor and Sky3 moved to dismiss Plaintiffs' promissory estoppel claims. To establish a claim of promissory estoppel, a plaintiff must allege that "(1) defendant made an unambiguous promise to plaintiff, (2) plaintiff relied on such promise, (3) plaintiff's reliance was expected and foreseeable by defendants, and (4) plaintiff relied on the promise to its detriment." *Quake Construction, Inc. v. American Airlines, Inc.*, 565 N.E.2d 990, 1004 (1990). Promissory estoppel is an affirmative cause of action. *Id.*; *see also The Bank of Marion v. Robert "Chick" Fritz, Inc.*, 311 N.E.2d 138, 140 (1974) ("Although there may be absent a bargained-for consideration, a person who makes a promise may nonetheless be bound by its terms.").

Finance Factor moves to dismiss Plaintiffs' promissory estoppel claim on the basis that promissory estoppel is an available theory "in the absence of a contract." *Newton Tractor Sales, Inc. v. Kubota Tractor Corp.*, 906 N.E.2d 520, 524 (2009) (citing *Quake*, 565 N.E.2d at 1004); (Dkt. 32, 45.) But in its Answer and Affirmative Defenses, in response to Plaintiffs' allegation that "Finance Factor has breached the Note[,]" Finance Factor asserts that it owes nothing to Plaintiffs because it transferred to Sky3 Holdings, LLC any principal and/or interest owed by Finance Factor to Plaintiffs. (Dkt. 31, ¶ 113.) Contrary to its own argument then, Finance

Factor in its Answer asserts that there is an "absence of a contract" with Plaintiffs, defeating its argument that promissory estoppel is not available.[4]

Sky3 also makes the argument that promissory estoppel is unavailable in the absence of a contract. Sky3 is not stuck with the same contradictory positions as Finance Factor, but both Sky3 and Finance Factor fail to consider that Plaintiffs are permitted to plead promissory estoppel in the alternative to the claims of breach of contract. "A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones." Fed. R. Civ. P. 8(d)(2). Even more specifically, "a party is allowed to plead breach of contract, or if the court finds no contract was formed, to plead for quasi-contractual relief in the alternative." *Cromeens, Hollman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 397 (7th Cir. 2003). Promissory Estoppel "is an alternative means of obtaining contractual relief under Illinois law" and therefore pleading the quasi contractual relief is permissible. *Wigod*, 673 F.3d at 566. Plaintiffs are not under any obligation, merely because they pleaded both breach of contract and promissory estoppel, to "embrace one over the other at this earlier stage of the proceedings." *See, e.g., Jackson Nat. Life Ins. v. Gofen & Glossberg, Inc.*, No 93 C 1539, 1993 WL 266548, at *3 (N.D. Ill. July 15, 1993) (plaintiff permitted to plead promissory estoppel alongside breach of contract). The Motions to Dismiss are denied with respect to Plaintiffs' promissory estoppel claims.

## IV. Conspiracy to Defraud

Finance Factor, Sky3, and the Fields Defendants all moved to dismiss the conspiracy to

---

[4] Defendants also argue that it is improper to rely on its Answer in considering a Rule 12(b)(6) motion. The cases Defendants cite to, however, do not support this contention. The district court case, *Lewis*, states that "12(b)(6) motion to dismiss is *generally* confined to the allegations contained in the complaint," and "the ban on considering matters outside the *pleadings* is not absolute." (emphasis added.) *Lewis v. County of* Cook, No. 10 C 1313, 2011 WL 839753 (N.D. Ill. Feb. 24, 2011) (citing *Cont'l Cas. Co. v. Am. Nat. Ins. Co.*, 417 F.3d 727, 731 (7th Cir. 2005)) (permitting district court to consider documents outside the pleadings in Rule 12(b)(6) motion.) Here, the Court is only considering the pleadings in reviewing the 12(b)(6) motion.

11

defraud claims against them. To succeed on a claim of civil conspiracy, a plaintiff must prove two things: "(1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff." *See Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 509 (7th Cir. 2007) (citation omitted). A defendant will be liable as a conspirator where he "understands the general objectives of the conspiratorial scheme, accepts them, and agrees, either explicitly or implicitly to do its part to further those objectives." *Adcock v. Brakegate, Ltd.*, 645 N.E.2d 888, 894 (1994).

*Finance Factor*

Finance Factor first argues that because Plaintiffs fail to state a claim for the underlying tort of fraud, the conspiracy to defraud claim must also fail. (Dkt. 32 at 7.) For reasons already discussed, Plaintiffs' ICFA and common law fraud claims survive and therefore the conspiracy claims will not be dismissed as they have the requisite underlying tort, or "some act in furtherance of the agreement, which is itself a tort." *Adcock*, 645 N.E.2d at 894. Plaintiffs allege fraudulent inducement to invest which is "a tortious act committed in furtherance of the agreement." *Independent Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 939 (7th Cir. 2011). Finance Factor further argues that Plaintiffs fail to plead sufficient facts to support that an agreement was made. (Dkt. 32 at 7.) But Plaintiffs allege that Mandell "colluded" with Finance Factor and other Mandell companies to invest in 5SN–a company that was not a third party borrower as promised. (Dkt. 1 ¶ 306.) The Complaint alleges the comingling of funds, rolling over of funds, and channeling of funds by Mandell companies into other Mandell and Fields "shell" companies, including Finance Factor. (Dkt. 1 ¶¶ 300, 301); *see also, e.g., Nautilus Ins.*

*Co. v. Reuter*, 537 F.3d 733, 737 (7th Cir. 2008) (citing *HOK Sport, Inc. v. FC Des Moines, L.C.*, 495 F.3d 927, 936 (8th Cir. 2007)) (While "[s]hell companies are not in themselves illegal . . ." they "may be used by another corporation or entity to advance fraud by way of the shell's 'front.'") Because the Complaint includes sufficient facts to claim both an agreement and at least one tortious act in furtherance, Plaintiffs have stated a claim for conspiracy to defraud upon which relief can be granted.

*Sky3*

Sky3 moves to dismiss Plaintiffs' conspiracy to defraud claim on the grounds that Plaintiffs' claim for conspiracy to defraud is deficient for lumping defendants without specifying each defendant's role in the conspiracy. (Dkt. 45 at 14.) However, just as the claims for fraud were alleged with sufficient specificity, here too Plaintiffs allege the individual role that Sky3 played in the conspiracy to defraud. Specifically, Mandell "colluded" with Sky3 and other Mandell companies to invest in 5SN–a company that was not a third party borrower as promised. (Dkt. 1 ¶ 306.) Plaintiffs need only further allege "at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff." *See Borsellino*, 477 F.3d at 509. The common law fraud and ICFA claims are underlying torts in furtherance of the agreement. *Id.* (Dkt. 1 ¶ 251.) The Complaint also specifies the role of Sky3 and alleges that Mandell authorized Sky3 to channel Plaintiffs' funds into a singular company, 5SN, in defiance of representations made by Mandell about diversifying investments. (Dkt. 1. ¶ 306.)

Finally, Sky3 argues that because Sky3 is an agent of the Mandell Companies, a civil conspiracy cannot exist. *Buckner v. Atl. Plant Maint. Inc.*, 694 N.E.2d 565, 571 (1998). ("[B]ecause the acts of an agent are considered in law to be the acts of the principal,

13

there can be no conspiracy between a principal and an agent."); (Dkt. 45 at 15.) However, the Complaint does not allege that the conspiracy is solely between only Mandell and Sky3. (Dkt. 1 ¶ 55.) Therefore, even if an agency relationship between Sky3 and Mandell is established, a conspiracy could still exist between Sky3 and any of the other named defendants. (*Id.* ¶ 294.) Plaintiffs sufficiently allege the elements of a conspiracy to defraud against Sky3, and allege Sky3's role with the required particularity of Rule 9(b).

*Field Defendants*

Like Sky3, Field asserts that Plaintiffs have inadequately distinguished between Defendants in alleging a claim of conspiracy to defraud against the Field Defendants. (Dkt. 42 at 11.) Where multiple defendants are involved in a case, "the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Vicom, Inc. v. Harbridge Merch. Servs. Inc.*, 20 F.3d 771, 777-78 (7th Cir. 1994); *see also Rocha*, 826 F.3d at 911. However, the role of each Defendant in the conspiracy has been sufficiently elaborated at this stage. In *Endo v. Albertine*, plaintiffs alleged that they were induced to invest on the basis of false statements and the defendants argued for dismissal because the allegations "impermissibly lump[ed] the defendants together." 812 F. Supp. 1479, 1497 (N.D. Ill. 1993). At this stage, like in *Endo*, Plaintiffs have no way of knowing the exact dynamics between the Mandell companies and the Field companies, but Plaintiffs "need not allege facts which are in the exclusive knowledge or control of the defendants." *Id*.

Here, it is enough that Plaintiffs have alleged the "rolling over" of notes and "comingling" of assets between Mandell and Field companies. (Dkt. 1 ¶¶ 300-302.) Field's company, KTG, Inc., the sole owner of KTG LLC, is a member of Sky3 and Sky3's alleged fraud has already been detailed above. (*Id.* ¶¶ 307, 310.) Mandell also invested Plaintiffs' funds

in 5SN, owned by Field, and the role 5SN played in the downfall of the scheme has also already been outlined above. (*Id.* ¶ 302.) Plaintiffs further allege that Mandell acted with "the knowledge and agreement of Field," and the conspiracy resulted in Plaintiffs' investments being channeled exclusively into companies owned or managed by Mandell and Field. (*Id.* ¶¶ 321, 294.) Because "[t]he allegations set forth the time, place, contents and consequences of any misrepresentations," the Complaint sufficiently informed each Defendant of their role. *Endo*, 812 F. Supp. at 1497.

## V. Unjust Enrichment

The Field Defendants also moved to dismiss Plaintiffs' claims for unjust enrichment. "Unjust enrichment is a remedy that lies where a 'defendant has unjustly retained a benefit to the plaintiff's detriment and . . . the defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Blythe Holdings, Inc. v. DeAngelis*, 750 F.3d 653 (7th Cir. 2014) (citing *Hess v. Kanoski & Assocs.*, 668 F.3d 446, 455 (7th Cir. 2012)). Where a benefit is transferred by a third party, retention of the benefit is unjust where "(1) the benefit should have been given to the plaintiff, but the third party mistakenly gave it to the defendant instead, (2) the defendant procured the benefit from the third party through some type of wrongful conduct, or (3) the plaintiff for some other reason had a better claim to the benefit than the defendant." *HPI Health Care Services, Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (1989) (citations omitted). Where a complaint alleges that wrongful conduct led to unjust enrichment, plaintiffs must "set out specific factual allegations which would support the conclusion that [defendant's] conduct in procuring the payments from [a third party] was wrongful." *Id.*

Field argues that Plaintiffs have failed to plead facts to support the conclusion that Field

15

obtained funds from Mandell Companies through any wrongful conduct. (Dkt. 42 at 9.) Field analogizes the present facts to those in *HPI*. 545 N.E.2d at 680. In *HPI* a plaintiff alleged that the defendant "requested" to be placed on a hospital's board of trustees and then "requested" payments be directed to defendant rather than plaintiff; there were no other allegations of wrongful conduct. *Id.* at 679–680. Here, the factual allegations support the conclusion that the Fields' companies procuring of payments was wrongful. Field was the owner of both KTG Inc., KTG LLC, and 5SN, and ultimately the vast majority of Plaintiffs' funds ended with 5SN through the collusion of Mandell Companies and Field. (Dkt. 1 ¶¶ 78, 79, 83.) Further, Field did not "observe proper corporate formalities" by transferring the loans from Plaintiffs' promissory notes between companies, comingling funds, and loaning funds to his own enterprises, and even to himself. (*Id.* ¶ 270-271.) Plaintiffs also allege that 5SN represented that it would be able to repay loans based on a lucrative relationship with Erricson. (*Id.* ¶ 72.) Plaintiffs sufficiently alleged that Field obtained Plaintiffs' funds from Mandell Companies through wrongful conduct and therefore the Motion to Dismiss the unjust enrichment claim is denied.

## CONCLUSION AND ORDER

For the foregoing reasons, Finance Factor, Sky3's, and KTG, Inc., KTG, LLC, and Daniel Field's Motions to Dismiss [32], [40], [43] are denied.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: August 18, 2017