**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

CLAY FINANCIAL LLC, *et al.*,　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　　*Plaintiffs*,　　　　)　　No. 16 C 11571
　　　v.　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)　　Hon. Virginia M. Kendall
MICHAEL S. MANDELL, *et al.*,　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　　*Defendants*.　　　　)

## MEMORANDUM OPINION AND ORDER

Plaintiffs[1] are companies, trustees, and two individuals that sued Defendants[2] alleging thirty-two counts in connection with investment loans made to the Defendant companies in exchange for promissory notes. (Dkt. 1). Specifically, Plaintiffs allege twenty-five counts of breach of contract (Counts I-XXV) against Defendants Finance Factor, Sky3 and Strategic Innovations (the "Mandell Companies"); one count of common law fraud and fraudulent misrepresentation against Mandell and the Mandell Companies (Count XXVI), one count of a violation of the Illinois Consumer Fraud and Deceptive Practices Act (ICFA), 815 ILCS § 505/2 against Mandell and the Mandell Companies (Count XXVII); one count of negligent misrepresentation against Mandell and the Mandell Companies (Count XXVIII); one count of unjust enrichment against Mandell and Field (Count XXIX); one count of promissory estoppel against Mandell and the Mandell Companies (Count XXX); one count of alter ego liability against Mandell (Count XXXI); and one count of conspiracy to defraud against all Defendants (Count

---

[1] Plaintiffs are Clay Financial, LLC ("Clay Financial"); Woodbourne Investments, LLC ("Woodbourne"); Geraldine K. Schwab, as Trustee of the Walter L. Schwab Irrevocable Trust ("Schwab Trust"); Walter Schwab, as Trustee of the Walter Revocable Trust ("Walter Trust"); Ellen G. Schwab, as Trustee of the Ellen G. Schwab Revocable Trust ("Ellen Trust"); and Carol Schwab and Dominque Schmidt, individually (collectively "Plaintiffs").

[2] Defendants are Michael S. Mandell, individually; Daniel Field, individually; Finance Factor, LLC ("Finance Factor"); Strategic Innovative Concepts, LLC ("Strategic Innovative"); Sky3 Holdings, LLC ("Sky3"); KTG IP, Inc. ("KTG Inc."); and KTG IP, LLC ("KTG LLC") (collectively "Defendants").

XXXII). *Id.* Plaintiffs obtained a default judgment against Defendants Mandell and one of his

companies, Strategic Innovations. (*See* Dkt. 30). Plaintiffs then filed three Motions for Partial

Summary Judgment against the remaining Defendants, seeking judgment as a matter of law on the

breach of contract claims against Defendant Sky3 (Counts V, VIII, XII, XV, XX and XXV) (Dkt.

74), on the breach of contract claims against Defendant Finance Factor (Counts I-III, VI-VII, IX-

XI, XII, XVI-XVII, XXI-XXIV) (Dkt. 78), on the common law fraud and ICFA claims (Counts

XXVI and XXVII) against Defendant Sky3 and on the conspiracy to defraud claim (Count XXXII)

against Defendants Sky3, Field, KTG LLC and KTG Inc. (Dkt. 82).[3] For the following reasons,

the Court grants Plaintiffs' Motion for Partial Summary Judgment (Finance Factor Contract

Claims) [78], grants Plaintiffs' Motion for Partial Summary Judgment (Sky3 Contract Claims)

[74], and grants in part and denies in part Plaintiffs' Motion for Partial Summary Judgment

(Common Law Fraud; Illinois Consumer Fraud Act; Conspiracy to Defraud) [82].

## BACKGROUND

The Court takes the relevant facts from the parties' Local Rule ("LR") 56.1 statements of

undisputed material facts and supporting exhibits.[4] The following facts are supported by the record

and, except where otherwise noted, are undisputed. The Court views these facts in the light most

favorable to the non-movants—here, Defendants—and draws all reasonable inferences in their

---

[3] Plaintiffs did not move on the following claims, which remain before the Court: Counts XXVI (common law fraud and fraudulent misrepresentation) and XXVII (ICFA) against Finance Factor; Count XXVIII (negligent misrepresentation) against Finance Factor and Sky3; Count XXIX (unjust enrichment) against Field; Count XXX (promissory estoppel) against Finance Factor and Sky3; and Count XXXII (conspiracy to defraud) against Finance Factor.

[4] *See* Plaintiffs' Statement of Material Facts (Sky3 Contract Claims) (Dkt. 76), Plaintiffs' Statement of Material Facts (Finance Factor Contract Claims) (Dkt. 80), Defendant Finance Factor, LLC's Answer to Plaintiffs' Statement of Material Facts and Statement of Additional Material Facts (Dkt. 121), Plaintiffs' Reply to Defendant Finance Factor, LLC's Answer to Plaintiffs' Statement of Material Facts and Statement of Additional Material Facts (Dkt. 124), Plaintiffs' Statement of Material Facts (Fraud Claims) (Dkt. 84), Response of Defendants Sky3 Holdings, LLC, Daniel Field, KTG IP, Inc. and KTG IP, LLC to Plaintiff's Statement of Material Facts in Support of Motion for Partial Summary Judgment (Fraud Claims) (Dkt. 129), and Plaintiffs' Reply to Defendants' Response to Plaintiffs' Statement of Material Facts (Fraud Claims) (Dkt. 131).

favor. *See Scott v. Harris*, 550 U.S. 372, 378 (2007); *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018).

However, Sky3 failed to file a response to Plaintiffs' Statement of Material Facts (Dkt. 75) filed in support of Plaintiffs' Motion for Partial Summary Judgment on the breach of contract claims against Sky3. (Dkt. 76). Several of these statements of material fact overlap with those made in Plaintiffs' Statement of Material Facts (Fraud Claims) (Dkt. 84) to which Sky3 did file a response jointly with Defendants Field, KTG LLC and KTG Inc.—but not all do. Local Rule 56.1(b) requires an opposing party to a motion for summary judgment to file a concise response the movant's statement of material facts that contains a response to each numbered paragraph in the moving party's statement. LR 56.1(3). Failure to do so with respect to any of the material facts set forth in the moving party's statement constitutes an admission of those uncontested facts. *Id.* ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."); *see also Ammons v. Aramark Uniform Serv., Inc.*, 368 F.3d 809, 817 (7th Cir.2004) ("[A] district court is entitled to expect strict compliance with Rule 56.1."); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs"). Federal Rule of Civil Procedure 56(e) similarly provides that if the nonmoving party "fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for the purposes of the motion." Fed. R. Civ. P. 56(e)(2). Therefore, the Court construes Sky3's failure to respond whatsoever to certain of the material facts set forth in Plaintiffs' statement filed in support of the motion on the breach of contract claims against Sky3 (*see* Dkt. 76) as an admission of those facts. *See United States v. Funds in Amount of Thirty Thousand Six Hundred Seventy Dollars*, 403 F.3d 448, 454 (7th Cir. 2005) (defendant failed to dispute any material facts

asserted by government in support of summary judgment, so facts were deemed to be admitted); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("We have consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission.").

## I.      Plaintiffs

Plaintiffs are individuals and related entities that seek, among other things, to enforce various promissory notes issued to them by Defendants Finance Factor and Sky3 between November 2014 and January 2016. (Dkt. 124 at ¶ 16). Specifically, Plaintiffs Clay Financial and Woodbourne are limited liability companies made up of various trusts and individuals. (*Id.* at ¶¶ 1, 2). Clay Financial's members include the Dominique M. Schmidt Irrevocable Trust, the Carol J. Schwab Irrevocable Trust, Julie Schwab-Schmidt, and Jeremie Schwab-Schmidt. (*Id.* at ¶ 1). Woodbourne's members include Carol Schwab, Ellen Schwab, and Diane Schwab. (*Id.* at ¶ 2). Plaintiffs Geraldine Schwab, Walter Schwab and Ellen Schwab are the respective trustees of the Walter L. Schwab Irrevocable Trust ("Schwab Trust"), the Walter Revocable Trust ("Walter Trust") and Ellen G. Schwab Revocable Trust ("Ellen Trust") and sue in their capacity as trustees. (*Id.* at ¶¶ 3-5). Finally, Plaintiffs Dominique Schmidt and Carol Schwab sue as individuals. (*Id.* at ¶¶ 6, 7). Schmidt served as business manager to Plaintiffs and was authorized to discuss investment opportunities, negotiate those opportunities and act on behalf of Plaintiffs. (Dkt. 80-1 at Ex. D, ¶¶ 4, 14).

## II.     Plaintiffs' Investments in Finance Factor

Finance Factor's business was to obtain loans from investors and then lend the money obtained to other borrowers at a higher interest rate than the rate Finance Factor paid to its lenders. (Dkt. 131 at ¶ 19). In June 2014, Mandell obtained a 50% ownership interest in Finance Factor from Field. (*Id.* at ¶ 16). Mandell is an attorney with previous experience managing private mutual

funds and private placements. (*Id.* at ¶ 3). When Field sold his interest in Finance Factor to Mandell, he also ceased any duties related to the management and direction of Finance Factor. (*Id.* at ¶ 18). However, as discussed further below, soon after he sold his interest and beginning in July 2015, Field's company KTG LLC became a customer of Finance Factor. (*Id.*). Field owns 100% of KTG Inc. which owns 100% of and is the sole member of KTG LLC. (*Id.* at ¶ 43).

Mandell was the manager of Finance Factor from June 2014 to late 2016. (Dkt. 124 at ¶ 18). Thomas Jiaris was another managing member of Finance Factor during this time. (*Id.* at ¶ 9; Dkt. 131 at ¶ 17). Mandell's duties as manager included managing the company's finances, policies and business practices, as well as being an authorized agent responsible for conducting its business. (Dkt. 124 at ¶ 18.). Mandell had specific authority to issue promissory notes to Plaintiffs on behalf of the company. (*Id.* at ¶ 20).

Part of Mandell's job was to solicit money from investors. (Dkt. 131 at ¶ 20). Because of KTG LLC's customer relationship with Finance Factor, Field knew at least partially of Mandell's efforts to raise money for Finance Factor. (*Id.* at ¶ 45). Mandell drafted a document entitled "Finance Factor Investment Opportunity Executive Summary" ("Executive Summary") to use for soliciting investments. (*Id.* at ¶ 22). Field had at least some input in the Executive Summary, including by providing comments on at least one draft of the document. (*Id.* at ¶ 22; *see also* Dkt. 129-1 at ¶ 3). The Executive Summary stated that Finance Factor was formed to provide "secured financing" to "emerging high growth companies, with an emphasis in the technology sector." (Dkt. 131 at ¶ 23). The Executive Summary also made the following specific representations:

> Finance Factor provides purchase order financing, account receivable financing, lines of credit and factoring services.
>
> The managers of Finance Factor conduct a thorough due diligence on all prospective borrowers.

> In many situations, the borrowers and their business are well known to Finance Factor. Many of our borrowers are repeat customers. Regardless of their familiarity, the value of the collateral pledged, whether a traditional hard asset (such as land, building or inventory) or a nontraditional asset (such as a patent, intellectual property, purchase order or accounts receivable) is carefully analyzed and confirmed before each loan is made.
>
> Determination of a loan worthy borrower also takes into consideration the credit-worthiness of the borrower's customer(s).
>
> [For lines of credit], [t]he line is secured by a first security interest in the borrower's assets (e.g., accounts, equipment, fixtures, chattel paper, patents, trademarks, copyrights, contract rights, documents, instruments, deposit accounts, cash and cash equivalents).

(*Id.* at ¶ 24).

On June 25, 2014, Mandell emailed Schmidt stating that he was writing on behalf of Finance Factor concerning a potential investment in Finance Factor and attached the Executive Summary with the intention that Schmidt and Plaintiffs would rely on the representations therein. (*Id.* at ¶ 25). On June 27, Mandell spoke with Schmidt on the phone and explained Finance Factor's business, essentially reiterating the representations made in the Executive Summary. (*Id.* at ¶ 26). Schmidt relied on these representations in deciding whether to work with Plaintiffs to invest in Finance Factor. (*Id.* at ¶ 27).

Plaintiffs made their first investment in Finance Factor on June 30, 2014 when Woodbourne lent Finance Factor $100.00.00, memorialized by a promissory note. (*Id.* at ¶ 28). Unbeknownst to Plaintiffs, Finance Factor loaned part of that $100,000 to KTG LLC, Field's company. (*Id.* at ¶ 29). In fact, a majority of the money Finance Factor raised was lent to KTG LLC pursuant to a $3,000,000 line of credit executed between Finance Factor and KTG LLC. (*Id.* at ¶ 34). Contrary to the Executive Summary, KTG LLC was not a technology company but instead, like Finance Factor, loaned money to other companies. (*Id.*). Finance Factor did not know the names of the companies KTG LLC lent money to (because Field refused to provide that

information) and never received any collateral or security interest in those companies in exchange for its loans. (*Id.* at ¶¶ 37, 39). Finance Factor also never received a "first security interest" in KTG LLC's assets or conducted "thorough due diligence" on KTG LLC, including to determine whether it was an "emerging high-growth" company. (*Id.* at ¶¶ 41-42). Despite all of this, Finance Factor continued to make numerous loans to KTG LLC, many of which were made with money lent to Finance Factor by Plaintiffs. (*Id.* at ¶ 38).

Plaintiffs continued to make loans to Finance Factor through the end of 2015. For example, on February 18, 2015, Finance Factor emailed Plaintiffs soliciting money to fund "high quality loans" that would be secured by a pledge to Finance Factor of the borrower's intellectual properties and/or stock/membership interests in technology companies. (*Id.* at ¶ 46). Several of the Plaintiffs then loaned Finance Factor a total of $550,000 in March 2015. (*Id.* at ¶ 47). Unbeknownst to Plaintiffs, Finance Factor then used the $550,000 to partially fund a $1,220,000 loan made to Field to purchase a personal residence. (*Id.* at ¶¶ 48-50). Finance Factor never conducted any due diligence on Field before making the loan and never received a first security interest in his assets. (*Id.* at ¶ 53). Finance Factor never informed Plaintiffs that their money was being lent to Field for this purpose. (*Id.* at ¶ 54).

Beginning in April 2015, Finance Factor also began lending to 5SN Communications, LLC. (*Id.* at ¶ 61). Unbeknownst to Plaintiffs, Mandell and Field were managers of 5SN and Sky3 (a company owned by KTG Inc. and discussed further below) performed back-office work for 5SN. (*Id.* at ¶ 64). Over time, Finance Factor lent 5SN $800,000 without ever receiving any collateral from 5SN, receiving a first security interest in the assets of 5SN, or conducting thorough due diligence on 5SN. (*Id.* at ¶ 62). Finance Factor never informed Plaintiffs that substantial amounts of their money were being invested in 5SN. (*Id.* at ¶ 64).

Finance Factor memorialized each loan made by Plaintiffs by issuing a promissory note signed by Mandell to the corresponding Plaintiff. (Dkt. 124 at ¶ 17). Specifically, Plaintiffs made the following loans to Finance Factor ("Finance Factor Notes"):

| | Date | Lender (Plaintiff) | Original Principal Sum | Annual Interest Rate (%) |
|---|---|---|---|---|
| 1. | 11/18/2014 | Ellen Trust | $100,000.00 | 15 |
| 2. | 11/18/2014 | Schwab Trust | $125,000.00 | 15 |
| 3. | 11/26/2014 | Dominque Schmidt and Carol Schwab | $200,000.00 | 15 |
| 4. | 12/15/2014 | Ellen Trust | $150,000.00 | 15 |
| 5. | 1/1/2015 | Clay Financial | $209,236.17 | 15 |
| 6. | 1/1/2015 | Woodbourne | $152,813.70 | 16 |
| 7. | 1/1/2015 | Schwab Trust | $180,306.85 | 16 |
| 8. | 1/1/2015 | Dominque Schmidt and Carol Schwab | $76,467.12 | 15 |
| 9. | 1/13/2015 | Clay Financial | $100,000.00 | 16 |
| 10. | 1/13/2015 | Dominque Schmidt and Carol Schwab | $100,000.00 | 16 |
| 11. | 3/1/2015 | Clay Financial | $245,000.00 | 20 |
| 12. | 3/1/2015 | Woodbourne | $95,000.00 | 20 |
| 13. | 3/1/2015 | Schwab Trust | $150,000.00 | 20 |
| 14. | 3/1/2015 | Walter Trust | $40,000.00 | 20 |
| 15. | 3/1/2015 | Dominique Schmidt and Carol Schwab | $20,000.00 | 20 |

(*Id.* at ¶¶ 21-23, 25-26, 28-30, 32, 34-35, 37-40.)

Each Finance Factor Note is governed by Illinois law, provides that the failure to repay the Notes upon maturity constitutes an "Event of Default" and contains a Default Rate equal to 5% greater than the regular Interest Rate. (*Id.* at ¶¶ 43, 45). Each Finance Factor Note also contains an attorneys' fees provision pursuant to which Finance Factor agreed to reimburse Plaintiffs for any and all out-of-pocket expenses, including reasonable fees and expenses of counsel, in connection with any litigation relating to the Notes. (*Id.* at ¶ 44).

Each of the Finance Factor Notes matured on December 31, 2015. (*Id.* at ¶ 42). In early January 2016, $915,000.00 was paid to the Plaintiffs on behalf of Finance Factor. (*Id.* at ¶ 66). Of the loans made by Plaintiffs to Finance Factor, $1,328,824.14 remains unpaid. (*Id.* at ¶ 67).

## III. Plaintiffs' Investments in Strategic Innovations

Field and Mandell formed Strategic Innovations in May of 2015 to pursue business-to-business loan opportunities similar to Finance Factor but for lenders willing to commit their funds for a longer period of time. (Dkt. 131 at ¶ 57).[5] Strategic Innovations' members included Mandell, Field's company KTG Inc., and Miycore LLC. (*Id.* at ¶ 10). Mandell was the manager of Strategic Innovations and, with the help of Field, directed the company's finances and operations. (*Id.* at ¶¶ 57-58). Mandell solicited money from Plaintiffs through Schmidt on behalf of Strategic Innovations, informing Schmidt that Strategic Innovations would make loans and operate similarly to Finance Factor except with loans extended for a longer term. (*Id.* at ¶ 59). Plaintiffs Clay Financial, Walter Trust and Ellen Trust lent money to Strategic Innovations and Strategic Innovations in turn lent the money received to KTG LLC and 5SN. (*Id.* at ¶ 61). In all, Strategic Innovations received $200,000 in loans from Plaintiffs that remain unpaid. (*Id.*at ¶ 80).

## IV. Promissory Notes with Sky3

In September 2015, Field and Mandell formed Sky3 due to internal disputes between the members of Strategic Innovations. (Dkt. 131 at ¶ 65). KTG Inc. is the sole member of Sky3. (Dkt 124 at ¶ 11; Dkt. 131 at ¶ 11). Mandell was the manager of Sky3 from September 2015 to October 2016. (Dkt. 124 at ¶ 19). As with Finance Factor, Mandell's duties as manager of Sky3 included managing the company's finances, policies and business practices, as well as being an authorized agent responsible for conducting its business. (*Id.*) Additionally, Mandell had specific authority

---

[5] Strategic Innovations has since been involuntarily dissolved. (Dkt. 124 at ¶ 10).

to issue promissory notes to Plaintiffs on behalf of the company. (*Id.* at ¶ 20). Field also had at least "minimal" input into the Sky3 business. (Dkt. 131 at ¶ 66).

In December 2015 when the Finance Factor Notes were coming due, Mandell and Schmidt discussed what to do next. (Dkt. 124 at ¶¶ 2-3). These discussions included Finance Factor possibly (1) paying a partial redemption of around $915,000 to Plaintiffs and/or (2) renewing the Finance Factor Notes such that each lender would have its loans to Finance Factor consolidated into one renewed note for the remaining balance less the $915,000 redemption with an interest rate of 21% and maturity date of June 30, 2016. (*Id.* at ¶¶ 2-4). Finance Factor paid Plaintiffs $915,000 in early January; after this payment, Finance Factor still owed Plaintiffs $1,328,824.14 in outstanding principal. (Dkt. 124 at ¶ 67). Finance Factor never issued renewed notes.

On January 1, 2016, Sky3 executed the following promissory notes to Plaintiffs ("Sky3 Notes"):

|     | Date      | Lender (Plaintiff)                   | Original Principal Sum | Annual Interest Rate (%) |
| --- | --------- | ------------------------------------ | ---------------------- | ------------------------ |
| 1.  | 1/1/2016  | Clay Financial                       | $188,830.00            | 21                       |
| 2.  | 1/1/2016  | Woodbourne                           | $172,814.00            | 21                       |
| 3.  | 1/1/2016  | Schwab Trust                         | $315,306.85            | 21                       |
| 4.  | 1/1/2016  | Walter Trust                         | $74,593.60             | 21                       |
| 5.  | 1/1/2016  | Ellen Trust                          | $284,593.60            | 21                       |
| 6.  | 1/1/2016  | Dominique Schmidt and Carol Schwab   | $396,467.12            | 21                       |

(Dkt. 76 at ¶¶ 24, 27, 31, 33, 36, 41).

Each of the Sky3 Notes fully matured on June 30, 2016. (Dkt. 124 at ¶ 46). The Sky3 Notes reflect all of terms negotiated by Mandell and Schmidt with regard to the proposed, renewed Finance Factor Notes, except for the name of the borrower and issuer as Sky3. Also, like the Finance Factor Notes, each of the Sky3 Notes is governed by Illinois law, provides that the failure to repay the Notes upon maturity constitutes an "Event of Default," contains a Default Rate equal

to 5% greater than the regular Interest Rate, and contains an attorneys' fees provision pursuant to which Sky3 agreed to reimburse Plaintiffs for any and all out-of-pocket expenses, including reasonable fees and expenses of counsel, in connection with any litigation relating to the notes. (*Id.* at ¶¶ 47-49).

On January 18, 2016, Mandell forwarded the January 1 Sky3 Notes to Schmidt and Ellen Schwab. (*Id.* at ¶ 57). After receiving the Sky3 Notes, Schmidt asked Mandell via email, "What is Sky3 Holdings?," to which Mandell responded, "Sky3 is the entity which is succeeding Finance Factor and Strategic Innovative Concepts in 2016." (Dkt. 124 at ¶ 58). However, this representation was untrue; both Sky3 and Mandell admit that Sky3 is, in fact, *not* the successor of interest to Finance Factor. (Dkt. 76 at ¶ 65; *see also* Dkt. 80-1 at Ex. E, ¶ 45). Schmidt testified that he interpreted Mandell's response to mean that "Sky3" was the new name for the structure of the entities. (*Id.* at ¶ 5). Schmidt also asked Mandell for more information about Sky3, including who its members were and what assets it held, but Mandell never provided the information requested. (*Id.* at ¶ 6).

At the time the Sky3 Notes were issued, there was no dispute between Finance Factor and any Plaintiff regarding the validity of the Finance Factor Notes, including the amount due on those Notes. (Dkt. 124 at ¶ 51). The Sky3 Notes do not mention or make any reference to Finance Factor or the Finance Factor Notes. (*Id.* at ¶ 54). Mandell did not communicate—verbally, in a written document, or otherwise—to Plaintiffs or their representatives at any time before issuing the Sky3 Notes that the Sky3 Notes were intended to serve as substitutes for the Finance Factor Notes or the amounts outstanding under the Finance Factor Notes or as a compromise of any dispute regarding the Finance Factor Notes or any other notes. (*Id.* at ¶¶ 54-55, 61). Likewise, Plaintiffs never consented in written form or otherwise to having the Sky3 Notes serve as

substitutes for the Finance Factor Notes or extinguish any obligations by Finance Factors to Plaintiffs. (*Id.* at ¶ 62). Plaintiffs remain the holders of the Finance Factor Notes and were never asked to surrender and never surrendered the Finance Factor Notes to anyone. (*Id.* at ¶¶ 50, 63).

Indeed, Mandell testified that while he *attempted* to substitute the Sky3 Notes for the Finance Factor Notes, Plaintiffs never accepted or consented to any such substitution. (*Id.* at ¶ 60; *see also* Dkt. 131 at ¶ 68). He testified further that "as far as Finance Factor was concerned, the loans, as a book entry, were transferred to Sky3" but that the paperwork actually transferring the obligations to Sky3 and releasing Finance Factor "never happened." (Dkt. 124 at ¶¶ 10, 15). Mandell intended to use the funds owed to Finance Factor and Strategic Innovations, including those owed by 5SN, to repay the Sky3 Notes. (Dkt. 131 at ¶ 67). On February 9, 2017—after this lawsuit was filed and more than one year after the Sky3 Notes were issued—Mandell forwarded his January 18, 2016 email exchange with Schmidt to Field stating that the "Schwab Family accepted these notes although I do not have an email to that effect," based on his belief that "there were no objections" to his (false) explanation in the January 2016 that Sky3 was the successor of interest of Finance Factor. (Dkt. 124 at ¶ 11).

Sky3 never made any payments on the Sky3 Notes issued to Plaintiffs. (*Id.* at ¶ 64). Sky has admitted to defaulting on the Sky3 Notes and owing Plaintiffs $1,432,604.94 in total outstanding principal, plus interest at the regular and default rates. (Dkt. 76 at ¶¶ 68-74).

Plaintiffs performed any and all obligations pursuant to both the Finance Factor Notes and Sky3 Notes. (Dkt. 76 at ¶ 75; Dkt. 124 at ¶ 76). Plaintiffs would never have loaned money to Finance Factor or Strategic Innovations had they known the companies did not perform thorough due diligence on borrowers, did not carefully analyze and confirm collateral used to secure the loans made to borrowers, did not receive first security interest in the borrowers' assets for lines of

credit, and did not take into consideration the credit-worthiness of the borrowers' customers—all contrary to the representations made in the Executive Summary. (Dkt. 131 at ¶¶ 70-73). Plaintiffs also would not have loaned money to Finance Factor or Strategic Innovations had they known the money they lent was being lent to KTG LLC or 5SN or had they known that a majority of their money would be lent to a single company (5SN) as opposed to being distributed among a diversified group of companies. (*Id.* at ¶¶ 74-75, 78).[6]

## **SUMMARY JUDGMENT STANDARD**

Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A factual dispute is genuine only if a reasonable jury could find for either party." *Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 599 (7th Cir. 2014) (internal quotation omitted). Courts do not weigh the evidence or make credibility determinations when deciding motions for summary judgment. *See Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011). Rather, the Court must "construe all factual disputes and draw all reasonable inferences in favor of [] the non-moving party." *Cole v. Bd. of Trustees of N. Ill. Univ.*, 838 F.3d 888, 895 (7th Cir. 2016), *cert. denied*, 137 S. Ct. 1614 (2017). The Court's obligation to construe the facts in the non-movant's favor, however, does not diminish the non-movant's responsibility to present those facts in the first place. *See Whitfield v. Snyder*, 263 F. App'x 518, 521 (7th Cir. 2008). The non-moving party "is only entitled to the benefit of inferences supported by admissible evidence, not

---

[6] Defendants Sky3, Field, KTG LLC and KTG Inc. object to these statements of fact in their Response only on the grounds that they are "speculative, conclusory and self-serving." (*Id.* ¶¶ at 70-75, 78). But "[d]eposition testimony, affidavits, responses to interrogatories, and other written statements by their nature are self-serving," *Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013) (citing *Payne v. Pauley*, 337 F.3d 767, 771 (7th Cir.2003)), and the Seventh Circuit has "repeatedly emphasized . . . that the term 'self-serving' must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgement." *Id.* (listing cases). "As long as a competent declarant makes statements based upon personal knowledge," —as Schmidt has here—"the declaration can support a summary judgment motion." *Id.* at 968.

those 'supported by only speculation or conjecture.'" *Grant v. Trustees of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (quoting *Nichols*, 755 F.3d at 599). Courts properly grant summary judgment where "no reasonable jury could rule in favor of the nonmoving party." *See Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 879 (7th Cir. 2016) (citation omitted).

The initial burden is on the moving party to inform the district court why a trial is not necessary. *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013). This burden "may be discharged by 'showing'—that is, point[ing] out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "Upon such a showing, the nonmoving party must 'make a showing sufficient to establish the existence of an element essential to that party's case.'" *Id.* (quoting *Celotex*, 477 U.S. at 322.) In other words, summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) (internal quotations omitted); *see also Caisse Nationale De Credit Agricole v. CBI Industries, Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996) ("A party seeking to defeat summary judgment is required to wheel out all its artillery to defeat it.").

## DISCUSSION

### I.  Breach of Contract Claims

Plaintiffs seek summary judgment on their breach of contract claims with respect to the Finance Factor Notes and Sky3 Notes. Both are governed by Illinois law. (Dkt. 76 at ¶ 49; Dkt. 124 at ¶ 45). To prevail on a breach of contract claim under Illinois law, a plaintiff must prove "(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach

of contract by the defendant; and (4) resultant injury to the plaintiff." *Hess v. Bresney*, 784 F.3d 1154, 1158-59 (7th Cir. 2015) (citation omitted).

### A.    Finance Factor

There is no dispute that the Finance Factor Notes were valid and enforceable (*see* Dkt. 124 at ¶ 51) or that Plaintiffs performed all obligations under the Finance Factor Notes (*see id.* at ¶ 76). There is also no dispute that Finance Factor defaulted on the Finance Factor Notes, thereby breaching the contract:  the Notes matured on December 31, 2015 (*id* at ¶ 42), Finance Factor failed to repay the Notes by December 31, 2015 (*see id* at ¶ 66), and by the terms of the Notes the failure to repay the Notes upon maturity constitutes an Event of Default.  (*Id.* at ¶ 43).  Finally, Plaintiffs can establish resultant injury as it is undisputed that $1,328,824.14 remains unpaid on the Finance Factor Notes.  (*Id.* at ¶ 67).

Finance Factor does not challenge whether Plaintiffs can establish any of the elements necessary to show a breach of contract and instead has asserted two affirmative defenses: (1) accord and satisfaction and (2) novation.  Finance Factor initially asserted only the defense of accord and satisfaction (*see* Dkt. 31 (Finance Factor Answer)), arguing the debts underlying the Finance Factor Notes were discharged through the $915,000 partial payment and alleged transfer of the remaining balance on the Finance Factor Notes to Sky3 through the Sky3 Notes.  (*Id.* at 39-40).  Under Illinois law, to establish an accord and satisfaction "there must be: (1) a *bona fide* dispute as to the claims pending between the parties; (2) an unliquidated sum owed; (3) consideration, (4) a shared mutual intent to compromise the claims; and (5) execution of the agreement." *Saichek v. Lupa,* 787 N.E.2d 827, 832 (Ill. 2003).  This defense fails because at the time the Sky3 Notes were issued, there was no dispute between Finance Factor and any Plaintiff regarding the validity of the Finance Factor Notes or the amount due on those Notes (Dkt. 124 at

¶ 51) and, therefore, no "shared mutual intent to compromise" such dispute. (*see also id.* at ¶¶ 53-55). Also, the amounts due under the Finance Factor Notes at that time were liquidated in that they could be calculated to a sum certain. (*Id.* at ¶ 56).

After Plaintiffs' filed their Motions for Partial Summary Judgment, Finance Factor sought and obtained leave to file amended affirmative defenses, adding novation as a second affirmative defense. (*See* Dkts. 114, 119). In its Response to Plaintiffs' Motion, Finance Factor arguably abandoned its original defense of accord and satisfaction (*see* Dkt. 120 at 5 ("[T]his Court never has to consider the affirmative defense of 'accord & satisfaction'"), relying instead on its newly asserted defense of novation. In support of this defense, Finance Factor argues that the parties agreed to extinguish the Finance Factor Notes with the Sky3 Notes. (*See id.* at 2-4).

"A novation is the substitution of a new obligation for an existing one, which is thereby extinguished." *Cincinnati Ins. Co. v. Leighton*, 403 F.3d 879, 887 (7th Cir. 2005) (citing *Faith v. Martoccio*, 316 N.E.2d 164, 167 (Ill. App. Ct. 1974)). "In order for there to be a novation, four elements are required: (1) a previous, valid obligation; (2) a subsequent agreement of all the parties to the new contract; (3) the extinguishment of the old contract; and (4) the validity of the new contract." *Id.* (citing *Roth v. Dillavou*, 835 N.E.2d 425, 433 (Ill. App. Ct. 2005)). "The intention of the parties to extinguish a debt is not presumed, and the party claiming discharge has the burden of proving novation by a preponderance of the evidence." *Id.* (citing *Aluminum Co. of America v. Home Can Manufacturing Corp.*, 480 N.E.2d 1243, 1248 (Ill Ct. App. 1985)). Finance Factor argues there is a genuine issue of material fact as to whether the parties' intended, once the Finance Factor Notes matured, to substitute the Sky3 Notes for the Finance Factor Notes thereby extinguishing any obligations under the Finance Factor Notes. (Dkt. 120 at 3-4); *see RB&W Mfg. LLC v. Buford*, 263 F. App'x 486, 489 (7th Cir. 2008) ("Because [defendant] admitted the

allegations in [the] complaint, the only question is whether there is a genuine issue of fact as to whether a novation occurred . . .").

A novation requires that all parties to the new contract(s)—here, Plaintiffs and Sky3—agreed to substitute the Finance Factor Notes for the Sky3 Notes. *Cincinnati Ins. Co.*, 403 F.3d at 887 (novation requires "a subsequent agreement of *all* the parties to the new contract") (emphasis added)). There is no evidence that Plaintiffs agreed to such substitution. *See id.* at 887 ("For there to be a novation, the obligee must assent to the substitution and agree to release the obligor."). First, the Sky3 Notes themselves do not mention or make any reference to the Finance Factor Notes. (Dkt. 124 at ¶ 54). Second, it is undisputed that Plaintiffs never consented in writing or otherwise to the Sky3 Notes substituting or extinguishing the Finance Factor Notes. (*Id.* at ¶ 62). Third, Mandell, who was the authorized agent responsible for conducting Sky3's business and issued the Sky3 Notes to Plaintiff (*id.* at ¶ 19-20), testified that Plaintiffs never agreed to substitute the Sky3 Notes for the Finance Factor Notes. (*Id.* at ¶ 60).

Finance Factor dismisses this overwhelming, undisputed evidence in Plaintiffs' favor and focuses instead on the "details surrounding the negotiations which occurred prior to and after the [Sky3] Notes were issued." (*See, e.g.*, Dkt. 120 at 2). Indeed, intent to create a novation need not be express and may be implied from the circumstances of a transaction or the subsequent conduct of the parties." *See Cincinnati Ins. Co.*, 403 F.3d at 887 (7th Cir. 2005) (citing *Burnett v. W. Madison State Bank*, 31 N.E.2d 776, 780 (Ill. 1941)); *see also Kroll v. Sugar Supply Corp.*, 452 N.E.2d 649, 653 (Ill. App. Ct. 1983). Finance Factor fails to present evidence of an implied agreement here.

First, Finance Factor points to the similarity between the proposed renewed Finance Factor Notes discussed between Schmidt and Mandell before the Finance Factor Notes matured and the

Sky3 Notes issued January 1, 2016.  Before the Finance Factor Notes matured, Mandell and Schmidt discussed a partial redemption and/or renewal of the Finance Factor Notes at a new 21% interest rate to mature on June 30, 2016.  Finance Factor made a $915,000 payment to Plaintiffs on the Finance Factor Notes.  However, Finance Factor never issued any renewed notes to Plaintiffs.  While the Sky3 Notes reflect the majority of the terms negotiated between Plaintiffs and Finance Factor with regard to the proposed renewed Finance Factor Notes, they differed with respect to one crucial element: Sky3, and not Finance Factor, was the named lender.  Therefore, the renewed Finance Factor Notes discussed between Finance Factor and Plaintiffs were never issued.

Finance Factor attributes much significance to the facts that Mandell intended the Sky3 Notes to serve as substitutions (Dkt. 124 at ¶ 60) and that Finance Factor recorded the transfer of the notes to Sky3 on its books (although it simultaneously admits the actual paperwork effecting the transfer was never completed) (*id.* at ¶¶ 10, 15).  But regardless of Mandell's, Finance Factor's or Sky3's *unilateral* intentions, the fact remains that Mandell never communicated to Plaintiffs, through Schmidt or otherwise, that the Sky3 Notes were intended to substitute the Finance Factor Notes before he issued them.  (Dkt. 124 at ¶ 54-55, 61); *see Vill. of S. Elgin v. Waste Mgmt. of Illinois, Inc.*, 810 N.E.2d 658, 670 (Ill. App. Ct. 2004) ("'Intent' refers to objective manifestations of intent in the words of the contract and the actions of the parties; it does not encompass one party's secret, undisclosed intentions or purely subjective understandings of which the other party is unaware."); *Newkirk v. Vill. of Steger*, 536 F.3d 771, 774 (7th Cir. 2008) ("Secret hopes and wishes count for nothing. The status of a document as a contract depends on what the parties express to each other and to the world, not on what they keep to themselves.") (applying Illinois law) (quotations omitted).  Plaintiffs could not have agreed to a substitution of which they were

not aware. In fact, Plaintiffs had never even heard of Sky3 before the Sky3 Notes were issued and, therefore, could never have reached *any* agreement with that company. (*See* Dkt. 124 at ¶ 58). Finally, Finance Factor has admitted that Plaintiffs remain the holder of the Finance Factor Notes and never surrendered them to anyone, including Sky3. (*See id.* at ¶ 63).

Finance Factor argues also that Plaintiffs agreed to the substitution *after* the Sky3 Notes were issued. Specifically, Finance Factor argues that after the Sky3 Notes were issued, Plaintiffs inquired as to what Sky3 was, were advised by Mandell that Sky3 was the successor of interest to Finance Factor and were satisfied with this response such that "the change in maker did not influence their decision to consolidate Finance Factor's debts into the [Sky3] Notes." (Dkt. 120 at 3). It is undisputed that after receiving the Sky3 Notes, Schmidt asked Mandell what Sky3 was and Mandell (falsely) responded that Sky3 was the entity succeeding Finance Factor and Strategic Innovations in 2016. (Dkt. 124 at ¶ 58). Additionally, Schmidt testified that he was satisfied with Mandell's explanation of Sky3—after he searched and verified Sky3 existed and was registered and that Mandell was a member of the entity—and that he would not have acted differently with respect to the Sky3 Notes had they been from Finance Factor or Strategic Innovations. (Dkt. 121-1 at 52:2-14, 53:4-7). But these facts do not show the agreement Finance Factor alleges. Contrary to Finance Factor's claim, Schmidt *never* testified that Plaintiffs agreed to consolidate the Finance Factor Notes into the Sky3 Notes or that he or Plaintiffs agreed to the substitution of the Sky3 Notes for the Finance Factor Notes based on Mandell's explanation in the January 18 email of what the Sky3 entity was. Rather, in his deposition, Schmidt testified that he did *not* consider the Sky3 Notes to be replacements for the Finance Factor Notes or Strategic Innovation Notes but rather viewed them merely as additional security for those notes. (*Id.* at 56:9-20).

Finance Factor also relies on an email sent from Mandell to other Finance Factor and Sky3 employees on May 4, 2016. (*See* Dkt. 121-4). Mandell's May 2016 email forwards a prior email that was sent by Schmidt to Mandell on April 1, 2016 with no text in the body; the email forwarded by Mandell to his employees attaches a spreadsheet listing what appears to be information about various loans made by Finance Factor, Strategic Innovations and Sky3 to Plaintiffs. (*Id.*). In the May 2016 email, Mandell states "[t]his sheet confirmed by Dominique as of 3/31/16 amounts due" and "I previously incorporated his changes." (*Id.*). Finance Factor argues that this spreadsheet shows (1) that Sky3 held the debt previously accounted for by the Finance Factor loans and (2) in April 2016, that time, Plaintiffs expected that Sky3 (not Finance Factor) would make the interest payments on the Sky3 Notes. (Dkt. 120 at 3).

There are several issues with this argument. First, the spreadsheet does not state anywhere that the Finance Factor Notes had been replaced by the Sky3 Notes. Second, Mandell's statements in the email accompanying the spreadsheet as to whether Schmidt confirmed the amounts listed therein are inadmissible hearsay. *See* Fed. R. Evid. 801(c); *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) ("[A] court may only consider admissible evidence in accessing a motion for summary judgment."). And third, nothing about the email as offered by Finance Factor shows that Schmidt ever in fact received the spreadsheet attached to Mandell's May 2016 email. (*See* Dkt. 124-1). Regardless, when asked about the spreadsheet in his deposition, Schmidt testified merely that the spreadsheet showed interest owed to Plaintiffs by Sky3 after the first quarter of 2016. (Dkt. 121-1 at 99:14:100:22). But this does not establish that Plaintiffs agreed to a substitution as Finance Factor suggests. Schmidt's expectation that Sky3 owed Plaintiffs first quarter interest is entirely consistent with Sky3's obligations under the Sky3 Notes as additional security for the Finance Factor Notes.

Finally, Finance Factor offers Mandell's 2017 email to Field as evidence that Plaintiffs eventually agreed to the substitution of the notes. However, in the email, Mandell states only that Plaintiffs "accepted [the Sky3] notes," not that Plaintiffs agreed the notes would serve as substitution for the Finance Factor Notes. (*Id.* at ¶ 11). More importantly, the email is hearsay to the extent Finance Factor relies on it for the truth of what Plaintiffs told Mandell—*i.e.*, that they "accepted" the notes—and, therefore, inadmissible for that purpose. *See* Fed. R. Evid. 801(c); *Gunville*, 583 F.3d at 985. At most, this email is evidence of Mandell's subjective belief in 2017— more than one year after the alleged novation and after this litigation began—and, therefore, is irrelevant to whether a novation occurred in January 2016. Thus, Finance Factor fails to establish any genuine issue of material fact as to whether Plaintiffs accepted the Sky3 Notes as substitution for the Finance Factor Notes at some point after they were issued.

The Court grants summary judgment in favor of Plaintiffs on Counts I, II, III, VI, VII, IX, X, XI, XII, XVI, XVII, XXI, XXII, XXIII and XXIV against Defendant Finance Factor. Pursuant to the terms of the Finance Factor Notes, Plaintiffs are entitled to the principal amounts due, past due interest and default interest as provided in the respective promissory notes, as well as attorneys' fees and costs.

**B.     Sky3**

Plaintiffs have established a breach of the promissory notes by Sky3: Sky3 does not dispute that the Sky3 Notes are valid and enforceable and that Plaintiffs performed on all obligations under the Sky3 Notes. (Dkt. 76 at ¶ 75). It is also undisputed that Sky3 failed to repay the Notes upon maturity and that Plaintiffs have been injured as result with all amounts owed under the Sky3 Notes remaining unpaid. (*Id.*). Sky3 does not challenge that Plaintiff can establish the elements necessary to prove their breach of contract claim.

Sky3 asserted three affirmative defenses in its Amended Answer to Plaintiffs' Complaint: (1) Setoff, (2) Adverse Agent, and (3) Lack of Consideration. (Dkt. 96 at 82). But Sky3 makes only the following one-sentence argument in its Response to Plaintiff's Motion on the breach of contract claims:

> Plaintiffs contact [sic] claim against Sky3 must fail for lack of consideration as required by Illinois must fail for lack of consideration as required by Illinois Statutes Chapter 810. Commercial Code § 5/3-303. Value and consideration.

(Dkt. 130 at 5).[7] Sky3 cites no facts to support this argument. "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." *Bank of Am., N.A. v. Veluchamy*, 643 F.3d 185, 190 (7th Cir. 2011); *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("It is not this court's responsibility to research and construct the parties' arguments."). Therefore, the Court considers this argument waived. *Id.*; *see also, e.g., United Cent. Bank v. Wells St. Apartments, LLC*, 957 F. Supp. 2d 978, 988 (E.D. Wis. 2013), *aff'd sub nom. United Cent. Bank v. KMWC 845, LLC*, 800 F.3d 307 (7th Cir. 2015) (defendants waived affirmative defenses at summary judgment by failing to "come forward with evidence supporting" the defenses and "develop[ing] no cogent legal argument in support of that defense"). Additionally, under Illinois law "consideration for a note is presumed." *Hartney v. Bevis*, 2013 IL App (2d) 120118-U, ¶ 38

---

[7] Sky3 asserts "lack of consideration" as an affirmative defense to the breach of contract claims. It is unclear whether under Illinois law "lack of consideration" is properly treated as affirmative defense. *Compare Worner Agency, Inc. v. Doyle*, 459 N.E.2d 633, 635 (Ill. App. Ct. 1984) (distinguishing between "failure of consideration"—an affirmative defense because it "necessarily admits the contract, but then refers to transaction in which consideration was anticipated but not materialize"—and "want of consideration"—not an affirmative defense because "[i]t does not give color to plaintiff's claim but rather attacks the sufficiency of that claim") *with Hamilton Bancshares, Inc. v. Leroy*, 476 N.E.2d 788, 791 (Ill. App. Ct. 1985) (treating "want of consideration" as affirmative defense) *and* 735 ILCS 5/2-613(d) (listing "want or failure of consideration" as an affirmative defense). This is especially true, whereas here, defendant fails to provide any facts or arguments in support of a blanket assertion of the defense. However, Sky3's failure to do so also renders the distinction meaningless; the argument fails at this stage either way as an underdeveloped "skeletal" argument.

(Ill. App. Ct. May 2, 2013) (citing *M. Loeb Corp., v. Brychek*, 424 N.E.2d 1193, 1296 (Ill. App. Ct. 1981) ("Consideration for a promissory note is rebuttably presumed and requires no proof other than the note itself"; "[f]ailure or want of consideration is an affirmative defense")). Sky3's fails to present any evidence to rebut this presumption.

Sky3's other asserted defenses are not even mentioned in its Response and are therefore waived as well. The first, setoff, is moot anyway as Plaintiffs agree with Sky3 that "any recovery Plaintiffs are entitled to receive from Defendants must be set-off against amounts previously received from other Defendants; Mandell; Finance Factor, LLC; or Strategic Innovations Concepts, Inc." (*See* Dkt. 75 at 5; Dkt. 96 at 83).

The Court grants summary judgment in favor of Plaintiffs on Counts V, VIII, XII, XV, XX and XXV against Defendant Sky3. Pursuant to the terms of the Sky3 Notes, Plaintiffs are entitled to the principal amounts due, past due interest and default interest as provided in the respective promissory notes, as well as attorneys' fees and costs.

## II.     Fraud Claims

### A.     Common Law Fraud against Sky3

To succeed on their claim of common law fraud under Illinois law against Sky3, Plaintiffs must prove that: (1) Sky3 made a false statement of material fact; (2) Sky3 knew the statement was false or in reckless disregard of its truth or falsity; (3) Sky3 made the statement with intent to induce Plaintiffs to act; (4) Plaintiffs reasonably believed the false statement to be true and acted in justifiable reliance on it; and (5) Plaintiffs suffered damages as a result of their reliance on the misrepresentation. *Massuda v. Panda Exp., Inc.*, 759 F.3d 779, 783 (7th Cir. 2014). Illinois law requires that Plaintiffs show each of these elements by clear and convincing evidence. *Id.*; *see also JPMorgan Chase Bank, N.A. v. Asia Pulp & Paper Co.*, 707 F.3d 853, 864 (7th Cir. 2013)

(applying clear-and-convincing evidentiary standard to fraud claim at summary judgment, citing *LaScola v. U.S. Sprint Commc'ns*, 946 F.2d 559, 569 (7th Cir. 1991)).

Plaintiffs devote very little argument in their Motion for Summary Judgment to the fraud claim against Sky3, choosing to focus instead on the conspiracy claim discussed below. As a result, it is unclear to the Court what "false statement of material fact" gives rise to their fraud claim against Sky3. The only statement Mandell made to Plaintiffs on behalf of Sky3 was that Sky3 was the successor in interest of Finance Factor. Sky3 admits this statement was false. But Plaintiffs offer no evidence showing they relied on this statement in agreeing to accept the Sky3 Notes as additional security for the Finance Factor Notes. Schmidt never states that Plaintiffs would not have done so without this representation. Rather, he testified that he was "satisfied" after confirming merely that Sky3 was a registered entity and that Mandell was a member. (Dkt. 121-1 at 52:2-14, 53:4-7).

Even if Plaintiffs had provided clear and convincing evidence to establish reliance, they fail to explain, much less prove, how they were damaged from such reliance. "Damage is an essential element of fraud" and "[t]he evidence must show a basis for computing damages with a fair degree of probability." *City of Chicago v. Michigan Beach Hous. Co-op.*, 696 N.E.2d 804, 809 (Ill. App. Ct. 1998). Plaintiffs offer no estimate or means of calculating the damages suffered on account of any alleged fraud by Sky3. In fact, the only injury Plaintiffs have shown related to the Sky3 Notes stem from Sky3's default on the Notes, for which they are entitled to contractual damages on their breach of contract claim, as explained above. Such contractual damages do not in themselves establish damages for purposes of a common law fraud claim. *See, e.g., Budnick Converting, Inc. v. Nebula Glass Int'l, Inc.*, 866 F. Supp. 2d 976, 995 (S.D. Ill. 2012) (fraud exception to economic loss doctrine does not apply where plaintiff "does not allege that its

damages were proximately caused by any fraudulent or intentional misrepresentations"); *Tolve v. Ogden Chrysler Plymouth, Inc.*, 755 N.E.2d 536, 540 (Ill. App. Ct. 2001) (privity of contact "does not establish the requisite element of damage for the common-law [fraud]"); *see also Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 395 (7th Cir. 2011) ("[F]raud claims must contain something more than reformulated allegations of a contractual breach.").

The little support Plaintiffs do offer for this claim focuses primarily on the following omissions made by Sky3: that Sky3 did not inform Plaintiffs that it was also lending money to KTG LLC, was performing back office work for and lending money to 5SN, and was owned by KTG Inc. (and, therefore, KTG LLC and Field) which owed Finance Factor more than $1,000,000. (Dkt. 83 at 7 (citing Dkt. 131 at ¶ 63-64, 66)). Under Illinois law, Sky3's failure to disclose a material fact may constitute a false statement of material fact but only if Sky3 had a duty to disclose that fact. *See Trustees of AFTRA Health Fund v. Biondi*, 303 F.3d 765, 777 (7th Cir. 2002); *Equity Capital Corp. v. Kreider Transp. Serv., Inc.*, 967 F.2d 249, 253 (7th Cir. 1992); *see also, e.g., Aeroground, Inc. v. CenterPoint Properties Tr.*, No. 10 C 652, 2010 WL 2169493, at *4 (N.D. Ill. May 27, 2010) (citing *Equity Capital Corp.*, 967 F.2d at 253); *Lefebvre Intergraphics, Inc. v. Sanden Mach. Ltd.*, 946 F. Supp. 1358, 1366 (N.D. Ill. 1996). Where Plaintiffs allege concealment of material facts under Illinois law, the elements of the fraud claim are modified such that they must prove: "(1) the concealment of a material fact; (2) that the concealment was intended to induce a false belief, *under circumstances creating a duty to speak*; (3) that the innocent party could not have discovered the truth through a reasonable inquiry or inspection, or was prevented from making a reasonable inquiry or inspection, and relied upon the silence as a representation that the fact did not exist; (4) that the concealed information was such that the injured party would have acted differently had he been aware of it; and (5) that reliance by the person from whom the

fact was concealed led to his injury." *Trustees of AFTRA Health Fund*, 303 F.3d at 777 (citing *Schrager v. North Comm. Bank*, 767 N.E.2d 376, 384 (Ill. App. Ct. 2002) (emphasis added).

The duty to disclose arises in only two circumstances: (1) when a fiduciary relationship is present or (2) when the defendant's acts contribute to the plaintiff's misapprehension and the defendant intentionally fails to correct the plaintiff. *Aeroground, Inc.*, 2010 WL 2169493, at *4; *see also, e.g. Lefebvre Intergraphics, Inc.*, 946 F. Supp. at 1366. No fiduciary duty exists here, *see Benson v. Stafford*, 941 N.E.2d 386, 397 (2010) ("The mere fact that the parties have engaged in business transactions or have a contractual relationship is not itself sufficient to establish a fiduciary relationship."), and Plaintiffs do not argue one does. Therefore, the duty would have to arise from Sky3's silence *plus* either deceptive conduct or an act of suppression. *See, e.g. Demaria v. Nissan N. Am., Inc.*, No. 15 C 3321, 2016 WL 374145, at *9 (N.D. Ill. Feb. 1, 2016) (citing *Mujal v. Baird & Warner, Inc.*, 485 N.E.2d 855, 862 (Ill. App. Ct. 1985) *overruled on other grounds by Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801 (Ill. 2005)); *Faust Printing, Inc. v. MAN Capital Corp.*, No. 02 C 9345, 2009 WL 5210847, at *4 (N.D. Ill. Dec. 23, 2009) (same); *Aeroground, Inc.*, 2010 WL 2169493, at *4 (same); *Lefebvre Intergraphics, Inc.*, 946 F. Supp. at 1366 (same).

The only "deceptive conduct" alleged on the part of Sky3 is Mandell's "attempt[] to improperly transfer the obligations of Finance Factor and [Strategic Innovations] to Sky3." (Dkt. 83 at 13). But, of course, such transfer never occurred and therefore caused no injury to Plaintiffs. The closest Plaintiffs come to showing any "act of suppression" is the evidence that Mandell refused or at least failed to provide Schmidt with the membership and asset information he requested. But again, there is scant evidence of any *reliance* on Mandell's silence as to Sky3's membership and assets. Nothing suggests Schmidt complained about Mandell's failure to provide

this information. In fact, he testified that he was "satisfied" merely after verifying on his own that the company was registered and that Mandell was a member. (Dkt. 121-1 at 52:2-14, 53:4-7). Regardless, any fraud claim based on omissions also fails for the same reason already given: Plaintiffs fail to show damages proximately caused by any reliance on the omissions as opposed to the mere default on the Sky3 Notes.

The Court denies Plaintiffs' motion for summary judgment against Sky3 on Count XXVI.

**B.    ICFA CLaim against Sky3**

To succeed their ICFA claim against Sky3, Plaintiffs must show: "(1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce;" and (4) that "the defendant's conduct is the proximate cause of the injury." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012) (citations omitted). Plaintiffs rely on the same evidence and arguments offered with regard to the common law fraud claim. Their ICFA claim fails for the same reasons. Plaintiffs fail to show Mandell's statement about Sky3 as successor to the other companies, attempt to substitute the Sky3 Notes for the Finance Factor Notes, failure to provide information requested by Schmidt, or failure to inform Plaintiffs as to Sky3's lending practices—the only potentially "deceptive or unfair" acts by Sky3 that Plaintiffs have established—proximately caused any of the damages attributable to Sky3. Therefore, the Court also denies Plaintiff's motion for summary judgment against Sky3 on Count XXVII.

**C.    Conspiracy to Defraud Claim against Sky3, Field, KTG LLC, and KTG Inc.**

To succeed on their claim of civil conspiracy under Illinois law, Plaintiffs must show: "(1) an agreement between two or more persons for the purpose of accomplishing either an unlawful

purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 509 (7th Cir. 2007) (citation omitted).

Plaintiffs have successfully proven that Mandell and Finance Factor committed fraud that caused injury to Plaintiffs. It is undisputed that Mandell, on behalf of Finance Factor, represented to Plaintiffs that the company provided "secured financing" to "emerging high growth companies, with an emphasis in the technology" and took certain, specific precautions—specifically, conducting "thorough due diligence on all prospective buyers," analyzing and confirming collateral, considering the credit-worthiness of the borrowers' customers and, in the case of a line of credit, obtaining a first security interest in a borrowers' assets—before making any loan. (Dkt. 131 at ¶¶ 22-26). It is also undisputed that Mandell made these false representations with the intention that Plaintiffs would rely on them in deciding to invest in Finance Factor. (*Id.* at ¶ 25). It is also undisputed that Plaintiffs relied on these representations in deciding to invest (*id.* at ¶ 27) and suffered damages as a result of their reliance in that Plaintiffs would not have invested millions of dollars in Finance Factor but for the false misrepresentations made. (*Id.* at ¶¶ at 70-75, 78); *see First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 843 N.E.2d 327, 333 (Ill. 2006) (recognizing exception to economic loss doctrine "where the plaintiff's damages are proximately caused by a defendant's intentional, false representation, *i.e.,* fraud"); *see also, e.g.,* BP Amoco Chem. v. Flint Hills Res., LLC, 489 F. Supp. 2d 853, 857 (N.D. Ill. 2007) (fraud exception to economic loss doctrine "covers claims of fraudulent inducement").

The conspiracy as defined by Plaintiffs was "a scheme [] designed to channel funds from unsuspecting investors [] to Field and Field's companies" by soliciting funds from investors based on specific representations of how the funds would be used and, once obtained, transferring those

funds to themselves instead. (Dkt. 83 at 10-11). The fraud committed by Mandell was clearly in furtherance of such scheme. The only question remaining then is whether Sky3, Field, KTG LLC and KTG Inc. entered an agreement with Mandell for the purposes of accomplishing this scheme.

"[T]he function of a civil-conspiracy claim is to extend 'liability for a tortious act beyond the active tortfeasor to individuals who have not acted but have only planned, assisted, or encouraged the act.'" *Estate of Holmes v. Pneumo Abex, L.L.C.*, 955 N.E.2d 1173, 1176 (Ill. App. Ct. 2011) (quoting *McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 258 (Ill. 1999)). "The agreement is a necessary and important element of this cause of action." *Borsellino*, 477 F.3d at 509 (quoting *McClure*, 720 N.E.2d at 258 (1999)). "The agreement must be knowingly and intentionally made." *Estate of Holmes*, 955 N.E.2d at 1176-77 (citing *McClure*, 720 N.E.2d at 258). "Mere knowledge of the fraudulent or illegal actions of another is [] not enough to show a conspiracy." *McClure*, 720 N.E.2d at 258. "Similarly, a defendant who innocently performs an act which happens to fortuitously further the tortious purpose of another is not liable under the theory of civil conspiracy." *Id.* (citations omitted). "However, a defendant who understands the general objectives of the conspiracy, accepts them, and agrees either explicitly or implicitly to further those objectives is liable as a conspirator." *Estate of Holmes*, 955 N.E.2d at 1177 (citing *Dukes v. Pneumo Abex Corp.*, 900 N.E.2d 1128, 1143 (Ill. App. Ct. 2008)); *see also McClure*, 720 N.E.2d at 258 (citing *Adcock v. Brakegate, Ltd.*, 645 N.E.2d 888, 894 (1994)).

Plaintiffs provide sufficient proof that Field and his entities had an agreement with Mandell to use Finance Factor and other companies to funnel funds from unsuspecting investors to Field and his companies. Field not only understood the objectives of the scheme but also *initiated* the scheme when he selected Mandell to manage Finance Factor and thus solicit investors and make representations on the company's behalf and issue notes in exchange for loans to the company.

Field relinquished all official duties to Mandell on paper but remained involved in Finance Factor operations as owner of the company's primary borrower: KTG LLC. Most importantly, Field assisted in formulating the representations to be made to investors when soliciting funds and had knowledge of Mandell's efforts to raise money—all while knowing that Finance Factor would not exercise the precautions set forth in the representations (for example, because Field refused to provide information necessary to conduct due diligence) and that the money raised would be lent through a line of credit to his company KTG LLC (and eventually to him directly) and *not* to an "emerging high growth" or tech company. Moreover, Field worked with Mandell to form additional entities such as Strategic Innovations and Sky3 to continue the scheme, including to further solicit funds from investors in the case of Strategic Innovations which Field admits he helped to direct with Mandell. The bottom line is that Plaintiffs offer ample evidence that Field not only knew about Mandell's fraudulent conduct but also planned (*e.g.* by selecting Mandell) and assisted (*e.g.*, in drafting the Executive Summary and creating new entities) the fraud.

Additionally, Field used KTG LLC—and, therefore, also its sole member KTG Inc.—to do so, thereby making these entities part of the conspiracy as well. Finally, Sky3 also took part in the conspiracy when its member-manager Mandell, on behalf of Sky3, attempted to transfer the Finance Factor Notes to Sky3, which would have delayed exposure of the scheme to Plaintiffs. Although unsuccessful, the attempt demonstrates an understanding of the conspiracy's objective— to defraud investors of funds for use by KTG LLC and other entities related to Defendants—and an act in furtherance of that objective.

Defendants argues that "there was no harm to Plaintiff's [sic] caused by Field and his entities because now, they owe no money to Finance Factor or to Plaintiffs." (*See* Dkt. 130 at 4). But a defendant's liability for the conspiracy does not turn only on injuries caused by him alone.

Parties to the conspiracy are jointly and severally liable for the actions of co-conspirators that caused harm to Plaintiffs. *Geinosky v. City of Chicago*, 675 F.3d 743, 750 (7th Cir. 2012); *see also Hoffman–La Roche, Inc. v. Greenberg*, 447 F.2d 872, 874 n. 2 (7th Cir.1971) ("Under Illinois law, parties to a conspiracy are joint tort-feasors; their liability is joint and several. . . The amount of each conspirator's liability is the same as that of his partners.").

The Court grants Plaintiffs' motion for summary judgment against Sky3, Field, KTG LLC and KTG Inc. on Count XXVII.

## CONCLUSION

For the reasons stated above, the Court grants Plaintiffs' Motion for Partial Summary Judgment (Finance Factor Contract Claims) [78] and Plaintiffs' Motion for Partial Summary Judgment (Sky3 Contract Claims) [74]. The Court grants in part and denies in part Plaintiffs' Motion for Partial Summary Judgment (Common Law Fraud; Illinois Consumer Fraud Act; Conspiracy to Defraud) [82] in that the Court denies summary judgment on the claims for common law fraud (Count XXVI) and violation of ICFA (Count XXVII) against Sky3 and grants summary judgment on the conspiracy to defraud claim (Count XXXII) against Defendants Sky3, Field, KTG LLC and KTG Inc.

_____
Hon. Virginia M. Kendall
United States District Judge

Date: September 28, 2018